**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 17-224-DLB-CJS**

**JESSICA ARNOLD et al.**                                        **PLAINTIFFS**


**v.**                          **MEMORANDUM OPINION AND ORDER**


**LIBERTY MUTUAL INSURANCE**
**COMPANY, et al.**                                          **DEFENDANTS**

                    * *  * *  * *  * *  * *  * *  * *  * *

## I.      INTRODUCTION

In this putative class-action lawsuit, Plaintiffs Jessica and Michael Arnold claim that

when they purchased an automobile-insurance policy from Safeco Insurance Company

of Illinois, they expected that the policy would cover the full amount of their auto loan in

the event of a total loss of the vehicle.  Specifically, they expected the policy to include

coverage for the "gap" between the actual value of the vehicle and the amount of Plaintiffs'

indebtedness under their auto loan.  Defendants assert that a policy exclusion precludes

coverage for a portion of the auto loan amount called "negative equity rollover," which is

caused when a remaining balance on the insureds' old vehicle is "rolled over" onto the

loan for their new vehicle.  Plaintiffs do not dispute the fact that the policy exclusion exists,

but take issue with the timing in which it was disclosed by the insurer.  Plaintiffs argue

that because the insurer waited to disclose the exclusion until after the policy had been

purchased, Plaintiffs were not sold the policy they expected and were foreclosed from

purchasing exclusion-free "gap" insurance from the dealership.  Plaintiffs assert twelve (12) causes of action arising from this central dispute.

This matter is now before the Court on three pending motions: Defendants' joint Motion to Dismiss and for Judgment on the Pleadings (Doc. # 49); Plaintiffs' Cross-Motion to Stay (Doc. # 51); and Defendants' Motion for Sanctions (Doc. # 52).  All three motions have been fully briefed and are now ripe for review.  *See* (Docs. # 50, 53, 54, 55, and 56).  For the reasons set forth herein, Defendants' joint Motion to Dismiss and for Judgment on the Pleadings (Doc. # 49) is **granted**; Plaintiffs' Cross-Motion to Stay (Doc. # 51) is **denied**; and Defendant Liberty Mutual's Motion for Sanctions (Doc. # 52) is **denied**.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On October 30, 2017, Plaintiffs Jessica Arnold and Michael Arnold (the "Arnolds"), both individually and on behalf of a class of similarly-situated persons ("Plaintiffs"), filed a Class Action Complaint in the Circuit Court of Boone County, Kentucky, against Defendants Liberty Mutual Insurance Company ("Liberty Mutual") and Safeco Insurance Company of America ("Safeco-America").  (Doc. # 1-4) (noting Complaint filed in Boone Circuit Court, No. 17-CI-01433).  Plaintiffs filed a First Amended Class Action Complaint on November 9, 2017.  (Doc. # 1-2).  On December 4, 2017, Defendants removed the action to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified in relevant part at 28 U.S.C. §§ 1332(d) and 1453.  (Doc. # 1).

Plaintiffs' First Amended Class Action Complaint alleges that, in 2014, the Arnolds entered into an agreement to trade their 2013 Mazda sedan for a 2014 Toyota Camry at a dealership in Florence, Kentucky.  (Doc. # 1-2 at ¶¶ 27-28).  The dealership determined that the Arnolds' Mazda had $3,700 in "negative equity," but it agreed to subtract $1,500

2

when calculating the amount to be "rolled over" into the auto loan for the Toyota Camry; the Arnolds claim this reduced the "negative equity roll-over" onto the financing for the Toyota Camry to $2,200. *Id.* ¶¶ 29, 31.

After the trade-in, the Arnolds purchased an insurance policy from the Defendants for the Toyota Camry and added guaranteed auto protection ("GAP") coverage to the policy.[1] *Id.* ¶¶ 27, 34. Plaintiff Jessica Arnold alleges that she "worked as a licensed, independent insurance agent for 13 years with Jack Lillie Insurance Agency" and that "[t]he Agency had appointments to sell insurance on behalf of several carriers to include, but not limited to the Defendants, Safeco and Liberty Mutual." *Id.* ¶ 25. Further, Plaintiff Jessica Arnold alleges that during the course of her time as an agent, she "routinely sold GAP insurance to her customers with the understanding that GAP insurance offered by the Defendants would pay the difference between the remaining debt on the customer's financing and the actual cash value of the motor vehicle after being declared a 'total loss.'" *Id.* ¶ 26. The Arnolds allege that the dealership offered GAP insurance, but Plaintiffs declined and decided to buy GAP coverage through the Defendants "[d]ue to Mrs. Arnold's experience as an agent and her familiarity with GAP insurance through Defendants." *Id.* ¶¶ 32, 33.

Plaintiffs allege that, after purchasing the GAP coverage from Defendants, an endorsement was mailed to them on September 2, 2015, and received three days later. *Id.* ¶¶ 64-65. The endorsement contained terms regarding the GAP insurance coverage and exclusions. *Id.* ¶¶ 63-66. Regardless of the endorsement's terms, however, the

---

[1]     Defendants dispute Plaintiffs' characterization of "GAP" coverage and assert that, in actuality, an endorsement for "Auto Loan/Lease Coverage" was added to the policy, which Defendants claim is a "variant" of GAP coverage that "generally offers only about 25% of the vehicle's cash value." (Doc. # 49 at 4 n.1).

Arnolds allege that they purchased this coverage "with the understanding that the Defendants would cover the difference between the remaining debt on their financing and the actual cash value [of the Toyota Camry] if it was ever declared a 'total loss' due to damage received in an accident or otherwise." *Id.* ¶ 33.

The Arnolds claim that they hit a deer while driving the Toyota Camry on November 29, 2015. *Id.* ¶ 35. After reporting the accident the following day, an adjuster allegedly inspected the vehicle and declared it a "total loss." *Id.* ¶¶ 36-38. Plaintiffs allege that Defendants were obligated under the GAP insurance policy to cover "the difference between the actual cash value of the automobile and the amount Plaintiffs owed through a financing agreement when the total loss occurred because the amount Plaintiffs owed exceeded the actual cash value." (Doc. # 1-2 at ¶¶ 150, 159). The Arnolds allege that, at the time of the accident, the actual cash value of their vehicle was $14,329.00 and the amount they owed on the vehicle was $19,686.04—leaving a $5,357.04 "gap" between these two values. *Id.* ¶ 57. The Arnolds allege that, after depreciation, the amount Defendants were obligated to pay under the GAP policy was $4,700. *Id.* ¶¶ 57, 84(b).

The Arnolds allege that, in response to their claim, Defendants asserted the Arnolds were only entitled to $747.04 under the GAP policy. *Id.* Defendants allegedly would not pay for the negative equity that Plaintiffs rolled over from the Mazda trade-in because the endorsement mailed to Defendants concerning their GAP coverage under the policy specifically excluded carry-over balances from previous loans or leases. *Id.* ¶¶ 56, 60. The language of the endorsement provides that:

With respect to this coverage, the provisions of the policy apply unless modified below:

**Auto Loan/Lease Coverage**

In the event of a total loss to a vehicle shown in the Declarations for which a specific premium charge indicates that Auto Loan/Lease Coverage applies, we will pay any unpaid amount due on the lease or loan for your covered auto less:

1. The amount paid under Part D of the policy; and
2. Any:
   a. overdue loan/lease payments at the time of loss;
   b. financial penalties imposed under a lease for excessive use, abnormal wear and tear or high mileage;
   c. security deposits not refunded by a lessor;
   d. cost for extended warranties, Credit Life Insurance, Health, Accident or Disability insurance purchased with the loan or lease; or
   e. *carry-over balances from previous loans or leases.*

(Docs. # 47-1 at 75; 48-1 at 75) (emphasis added).

In their pleadings, the Arnolds take issue with the fact that the endorsement containing the exclusion language for carry-over balances from a previous loan was not provided to them at the time that they purchased the policy, but rather was mailed to them three days later on September 2, 2015. (Doc. # 1-2 at ¶¶ 65-66). They allege that by offering GAP insurance to consumers purchasing a vehicle, but waiting to disclose the exclusions to consumers until after the purchase of the vehicle and insurance, Defendants foreclosed the purchasers' opportunity to obtain GAP insurance elsewhere without such an exclusion. *Id.* ¶ 10-11 (alleging that "this type of coverage is only available through the dealership at the time of purchase and delivery of a motor vehicle.").

Plaintiffs assert that they would not have purchased this GAP insurance but for the alleged "fraudulent representations and omissions" by the Defendants. *Id.* ¶¶ 124-25, 193-94. Consequently, Plaintiffs allege that Defendants' conduct "constitute[s] fraud and

runs contrary to Kentucky Consumer Protection Act," Ky. Rev. Stat. § 367.120, *et seq.*, "and the Kentucky Unfair and Deceptive Trade Practices Act," Ky. Rev. Stat. § 367.170. *Id.* ¶ 10. Plaintiffs "bring this action on behalf of a class of persons who purchased the GAP insurance policy from the Defendants." *Id.* at ¶ 11. Plaintiffs propose a national class composed of "[a]ll persons in the United States who have purchased GAP insurance from Defendants and have suffered a loss as a result of the Defendants' unfair, fraudulent, and deceptive practices and who have fallen victim to the Defendants' unfair exclusion policy." *Id.* ¶ 102.

The First Amended Class Action Complaint alleges twelve (12) causes of action. First, Plaintiffs assert a negligence claim (Count I) for "fail[ing] to use reasonable care in communicating the exceptions under the GAP insurance coverage." *Id.* ¶ 114. Second, Plaintiffs assert a claim for "fraud and misrepresentation" (Count II) for "willfully fail[ing] to disclose the exclusions under the GAP insurance policy" until after the policy had been purchased. *Id.* ¶ 122. Third, Plaintiffs assert a violation of the Kentucky Consumer Protection Act ("KCPA"), Ky. Rev. Stat. § 367.110 *et seq.* (Count III). *Id.* ¶ 132. Fourth, Plaintiffs assert a civil-conspiracy claim (Count IV), alleging that Defendants marketed and sold GAP insurance policies to the Plaintiffs "in furtherance of the conspiracy to entice their agents to continue selling GAP insurance, without providing any agent resources advising the agent of the exclusions, in order for the Defendants to retain the purchase price and premiums associated with GAP insurance." *Id.* ¶ 138. Fifth, Plaintiffs assert an unjust-enrichment claim (Count V), asserting that Defendants "have been unjustly enriched in retaining the revenues derived from Plaintiffs' and the proposed class' purchase of the GAP insurance." *Id.* ¶ 143. Sixth, Plaintiffs assert a claim of "bait

advertising" (Count VI), asserting that Defendants offered "GAP insurance coverage through advertising, but had no intent of ever providing the actual, true coverage under a GAP insurance policy or endorsement in the case of a valid claim." *Id.* ¶ 153. Seventh, Plaintiffs assert a claim of breach of contract (Count VII) for failing to cover Plaintiffs "for the difference between the actual cash value of the automobile and the amount Plaintiffs owed through a financing agreement when the total loss occurred because the amount Plaintiffs owed exceeded the actual cash value." *Id.* ¶ 159. Eighth, Plaintiffs assert a breach-of-fiduciary-duty claim (Count VIII). Ninth, Plaintiffs assert a common-law-bad-faith claim (Count IX). *Id.* ¶ 183. Tenth, Plaintiffs assert a claim of fraud by omission and concealment (Count X). *Id.* ¶¶ 185-197. Eleventh, Plaintiffs assert a promissory-estoppel claim (Count XI), alleging that "Defendants induced the Plaintiffs and the proposed class to purchase the GAP insurance coverage" which Plaintiffs purchased "[i]n reasonable and justifiable reliance upon Defendants['] representations and promises." *Id.* ¶¶ 201-02. Twelfth and finally, Plaintiffs assert a violation of the Kentucky Unfair Claims Settlement Practices Act, Ky. Rev. Stat. § 304.12 (Count XII), and further allege that "[t]hese actions rise to a level that permits the imposition of punitive damages." *Id.* ¶¶ 207-214.

On August 17, 2018, the Court held a telephonic conference to discuss four pending motions in this matter: Defendants' (First) Motion for Judgment on the Pleadings (Doc. # 23), Plaintiffs' (First) Motion to Stay (Doc. # 37), Plaintiffs' Motion for Leave to Amend the First Amended Complaint (Doc. # 38), and Defendants' Motion to Strike (Doc. # 41). Following the conference, the Court entered an Order granting leave for Plaintiffs to amend the complaint "to the extent that Plaintiffs seek to name the proper party and amend the allegations of Count Two." (Doc. # 45). The Court denied the other pending

motions, and provided that Defendants may renew their Motion for Judgment on the Pleadings after the filing of Plaintiffs' Second Amended Class Action Complaint. *Id.*

Plaintiffs filed their Second Amended Class Action Complaint on August 31, 2018. (Doc. # 46). This pleading substituted Safeco Insurance Company of Illinois ("Safeco-Illinois") for the previously-named Safeco Insurance Company of America ("Safeco-America"), and added more specific allegations to the "Fraud and Misrepresentation" claim (Count II). *See id.* (highlighting changes and amendments in **bold** typeface). Otherwise, the allegations were identical to the First Amended Class Action Complaint. *Compare* (Doc. # 1-2), *with* (Doc. # 46).

Defendants Liberty Mutual and Safeco-Illinois filed their joint Motion to Dismiss for Lack of Jurisdiction and (Renewed) Motion for Judgment on the Pleadings on September 11, 2018. (Doc. # 49). Plaintiffs filed a joint Response in Opposition and Cross-Motion to Stay on October 2, 2018. (Doc. # 51). Defendant Liberty Mutual then filed a related Motion for Sanctions on October 3, 2018. (Doc. # 52). The parties having subsequently filed the attendant response and reply briefs to these pending motions, *see* (Docs. # 53, 54, 55, and 56), the matter is now ripe for review.

## III. ANALYSIS

### A. Defendants' Joint Motion to Dismiss and for Judgment on the Pleadings

Defendants Liberty Mutual and Safeco-Illinois assert in their joint Motion to Dismiss for Lack of Jurisdiction and Motion for Judgment on the Pleadings that "both Defendants are entitled to judgment as a matter of law as to *each* claim." (Doc. # 49 at 1) (emphasis added). In their accompanying Memorandum in Support, Defendants first argue that, as to Defendant Liberty Mutual, all of Plaintiffs' claims should be dismissed pursuant to Rule

12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction. Specifically, Defendants argue that, because "Plaintiffs purchased the Auto Loan/Lease Coverage at issue from Safeco[-Illinois]," not Liberty Mutual, Plaintiffs therefore have no standing to assert claims against Liberty Mutual. (Doc. # 49 at 3, 7-8). Alternatively, Liberty Mutual next moves for judgment on the pleadings pursuant to Rule 12(c) for the same reason—that it is not the corporate entity who sold the policy at issue. *Id.* at 9. The remaining arguments assert that Defendants are entitled to judgment on the pleadings as to all of Plaintiffs' claims against both Liberty Mutual and Safeco-Illinois pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

In opposing Defendants' Motion, Plaintiffs assert the following: the Motion should be converted to a motion for summary judgment because the Defendants cited to evidence (the policy); the converted motion should then be stayed; Plaintiffs should be allowed to engage in discovery regarding the corporate relationship between Defendants Safeco-Illinois and Liberty Mutual prior to the Court's adjudication of Defendants' subject-matter jurisdiction argument; three of Defendants' statute-of-limitations arguments fail because different limitations periods apply to the claims; and that Plaintiffs state plausible claims for relief. *See* (Doc. # 50). The Court will address each of Defendants' arguments and Plaintiffs' attendant counter-arguments in turn.

### 1. Liberty Mutual's Motion to Dismiss for Lack of Subject-Matter Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1)

Defendant Liberty Mutual first moves to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction. (Doc. # 49 at 7-8). Specifically, Liberty Mutual asserts that Plaintiff lacks Article III standing to assert a claim because Safeco-Illinois, not Liberty Mutual, issued the subject insurance policy. *Id.*

Therefore, Liberty Mutual argues that Plaintiffs cannot demonstrate the second and third elements of standing—that "the challenged conduct of the defendant [Liberty Mutual] caused the injury," and that "a favorable decision will redress [Plaintiffs'] injuries." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

### a. Standard of Review

Article III of the Constitution limits the jurisdiction of federal courts to hear only actual cases and controversies. U.S. Const. art. 3 § 2. Accordingly, Plaintiffs bear the burden to establish standing. *Lyshe v. Levy*, 854 F.3d 855, 856 (6th Cir. 2017) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). To establish the "irreducible constitutional minimum of standing," Plaintiffs must establish: (1) they suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent rather than conjectural or hypothetical; (2) that there is a causal connection between the injury and each defendant's alleged wrongdoing; and (3) that the injury can likely be redressed. *Lujan*, 504 U.S. at 560-61. "Whether a party has standing is an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 F. App'x 409, 410-11 (6th Cir. 2013). Thus, Liberty Mutual's argument that Plaintiffs lack standing raises the issue of whether the Court has subject-matter jurisdiction.

"If lack of subject-matter jurisdiction is raised in a motion to dismiss, the plaintiff "bears the burden of proving jurisdiction in order to survive the motion." *Merck Sharp & Dohme Corp. v. Conway*, No. 3:11-cv-51-DCR, 2012 WL 1029427, at *2 (E.D. Ky. Mar. 26, 2012) (citing *Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n*, 287 F.3d 568, 573 (6th Cir. 2002)). However, plaintiffs "survive the motion to dismiss by

showing 'any arguable basis in law' for the claims set forth in the complaint." *Id.* (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996)).

In evaluating a motion to dismiss under 12(b)(1), courts must first consider whether the challenge to subject-matter jurisdiction is a facial attack or a factual attack. *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014). A factual attack challenges "the factual existence of subject-matter jurisdiction," and a court has "broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.* "When considering a factual attack, there is no presumption of truthfulness applied to the allegations." *Merck*, 2012 WL 1029427, at *2. Instead, the Court "must weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Id.* (citing *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). In contrast, a facial attack goes to the question of whether the plaintiff has alleged a basis for subject-matter jurisdiction. *Id.* When reviewing a facial attack, the Court must accept all the allegations in the complaint as true, and "[i]f those allegations establish federal claims, jurisdiction exists." *Id.* (citing *Gentek*, 491 F.3d at 330). "A challenge to the plaintiff[s'] standing is a facial attack." *Id.*

> **b.** **Whether Plaintiffs lack standing to assert a claim against Liberty Mutual pursuant to Rule 12(b)(1)**

First, in evaluating Liberty Mutual's challenge to Plaintiffs' standing under Rule 12(b)(1), it is clear that Liberty Mutual brings a facial attack. *See Merck*, 2012 WL 1029427, at *2 ("A challenge to the plaintiff[s'] standing is a facial attack."). This is true regardless of the fact that Liberty Mutual attached the insurance policy to its Answer and

relies on this document in support of its argument. (Doc. # 48-1). "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the [Plaintiffs'] complaint and are central to [their] claim." *Weiner, D.P.M. v. Klais & Co.*, 108 F.3d 86, 88 n.3 (6th Cir. 1997), *overruled on other grounds by Swierkiwica v. Sorema, N.A.*, 534 U.S. 506 (2002). Plaintiffs refer to the policy—and Defendants' respective duties under the policy—extensively in their pleadings, and the policy is central to Plaintiffs' action. *See generally* (Doc. # 46).

Defendant asserts that, because the policy was issued by Safeco-Illinois, not Liberty Mutual, Plaintiffs' pleadings fail on their face to demonstrate standing because "a parent corporation or owner is not liable for the acts of its subsidiaries" without piercing the corporate veil—which has not been alleged here. (Doc. # 53 at 3) (citing *Oliver v. St. Luke's Dialysis, LLC*, No. 1:10-cv-2667, 2011 WL 1326251, at *18 (N.D. Ohio Apr. 5, 2011); *Derby City Capital, LLC v. Trinity HR Servs.*, 949 F. Supp. 2d 712, 721 n.7 (W.D. Ky. 2013)); (Doc. # 56) ("The Arnolds do not seek to pierce the corporate veil.").

Liberty Mutual's argument, however, sidesteps Plaintiffs' claims that Liberty Mutual itself—not vicariously or merely through Safeco-Illinois—had a hand in developing the policy exclusions and marketing materials regarding the GAP coverage at issue; Plaintiffs also claim that Liberty Mutual participated in the claims-handling process. *See, e.g.*, (Doc. # 46 at ¶¶ 37, 62, 68, 76, 93(a), 127, 150-51). Accepting Plaintiffs' allegations as true as the Court must, *see Gentek*, 491 F.3d at 330, Plaintiffs have set forth an arguable basis in law that there is "a causal connection between the injury and each defendant's alleged wrongdoing" and "that the injury can likely be redressed." *Lujan*, 504 U.S. at 560-61. As the Court finds Plaintiffs have met the constitutionally-minimum requirements to

establish standing, the Court has subject-matter jurisdiction and dismissal is not required under Rule 12(b)(1). Consequently, Liberty Mutual's Motion to Dismiss on the ground of subject-matter jurisdiction fails. However, Defendants' joint Motion (Doc. # 49) will be **granted** on other grounds, as both Defendants are entitled to judgment on the pleadings under Rule 12(c). *See infra* Section III.A.2.

### 2. Defendants' Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c)

Defendants next move for judgment on the pleadings on each of Plaintiffs' twelve causes of action pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

### a. Standard of Review

The standard of review for a Rule 12(c) motion for judgment on the pleadings is the same as a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011); *Mixon v. Ohio*, 193 F.3d 389, 399 (6th Cir. 1999). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). As the Supreme Court explained, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Pursuant to this standard, relief should be granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *D & S Remodelers, Inc. v. Wright Nat'l Flood Ins. Servs., LLC*, 725 F. App'x 350, 354 (6th Cir. 2018) (citing *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007)). In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept

"all well-pleaded material allegations of the [Plaintiffs'] pleadings" as true, "and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citing *JPMorgan*, 510 F.3d at 581). However, as with a 12(b)(6) motion, this assumption of truth does not extend to "legal conclusions or unwarranted factual inferences." *JPMorgan*, 510 F.3d at 581-82 (citation and internal quotation marks omitted). *Accord Iqbal*, 556 U.S. at 668 (explaining that this presumption does not apply to legal conclusions).

Plaintiffs argue that the 12(c) motion should be converted to a motion for summary judgment because "[i]n their motion, Defendants present matters outside the pleadings, namely the exhibit to their Answers." (Doc. # 50 at 8). Defendants' Answers (Docs. # 47 and 48) to Plaintiffs' Second Amended Class Action Complaint (Doc. # 46) each attach a single, identical exhibit. (Docs. # 47-1 and 48-1). The exhibit consists of the policy declarations, endorsements, and policy, as well as attendant letters communicating the changes in coverage ("policy documents"). *See id.* The exhibit also contains an affidavit from a Safeco-Illinois archivist attesting that the attached policy and endorsements are a true and exact copy. (Docs. # 47-1 at 1 and 48-1 at 1). Because Defendants' 12(c) argument refers to a portion of the policy documents—namely, the policy endorsement governing "Auto Loan/Lease Coverage"—Plaintiffs assert that Defendants' Motion should be converted to one for summary judgment and Plaintiffs should be provided "an opportunity to present all material made pertinent to a motion for summary judgment." (Doc. # 50 at 8).

Plaintiffs' argument sidesteps the fact that the Sixth Circuit has weighed in on the scope of the exclusion rule and expressly noted that courts may consider not only exhibits

attached to the *complaint* without converting a 12(c) motion into a motion for summary judgment, but also "public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). *Accord Weiner, D.P.M. v. Klais & Co.*, 108 F.3d 86, 88 n.3 (6th Cir. 1997) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the [Plaintiffs'] complaint and are central to [their] claim."), *overruled on other grounds by Swierkiwica v. Sorema, N.A.*, 534 U.S. 506 (2002). Likewise, supplemental documents attached to a 12(b)(6) or 12(c) motion do not convert the motion into one for summary judgment where the documents do not "rebut, challenge, or contradict anything in the plaintiff[s'] complaint." *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993) (internal citation omitted).

Pursuant to this standard, the Sixth Circuit has consistently allowed district courts to consider affidavits and exhibits submitted by defendants when documents such as insurance policies, ERISA plan documents, or other contracts are central to the plaintiffs' cause of action. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507 (6th Cir. 1999) (holding that insurer's attachment of life-insurance policies to its 12(b)(6) motion did not require court to convert to a motion for summary judgment where policies were referred to throughout complaint and were central to insureds' fraud claim arising from purchase of policies); *Weiner*, 108 F.3d at 89 (finding defendant properly attached plan documents to 12(b)(6) motion in ERISA case). The Sixth Circuit reasoned that "a defendant may introduce certain pertinent documents" such as a "written instrument" that may be

attached as an exhibit to a pleading pursuant to Federal Rule of Civil Procedure 10(c) "if the plaintiff fails to do so." *Weiner*, 108 F.3d at 89. If defendants were not permitted to do so, "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.*

Here, it is clear that the policy terms and exclusions "are referred to in the [c]omplaint and are central to the claims contained therein."[2] *Bassett*, 528 F.3d at 430. All of Plaintiffs' twelve causes of action arise from the fact that their insurer did not provide coverage for "carry-over balances from previous loans or leases" pursuant to an exclusion contained in a policy endorsement. *See* (Doc. # 46). Thus, the policy is referred to in the Plaintiffs' pleadings and central to the claims therein. Therefore, it may be considered without converting to a motion for summary judgment. *Bassett*, 528 F.3d at 430.

Moreover, the policy documents attached to Defendants' Answers do not "rebut, challenge, or contradict anything in the plaintiff[s'] complaint." *Song*, 985 F.2d at 842. Plaintiffs do not dispute the fact that the policy endorsement at issue exists. *See, e.g.*, (Doc. # 46 at 11) ("After reviewing all relevant documents, Mrs. Arnold found an endorsement page that was mailed on September 2, 2015, and received on September 5, 2016."). Rather, Plaintiffs' causes of action center upon legal questions regarding the *timing* of the insurer's communication of the endorsement, as Plaintiffs allege that the insurer strategically waited until after the policy was purchased to mail Plaintiffs a copy of the endorsement. *See, e.g.*, (Doc. # 46 at 12) ("[B]ecause of the Defendants' practice of non-disclosure, the Plaintiffs were unaware of any exclusions under their GAP insurance

---

[2] Plaintiffs do not directly refer to the correspondence contained in the exhibits in their pleadings. *Compare* (Doc. # 46), *with* (Doc. # 48-1). However, Defendants' Motion does not refer to the correspondence and the Court need not consider them in making its determination.

policy until it was too late to explore different options that provided true GAP coverage."). Nothing about the exhibit rebuts, challenges, or contradicts Plaintiffs' core factual allegations. Therefore, the Court's consideration of the policy and attendant endorsements does not require conversion of Defendants' 12(c) motion into a motion for summary judgment. *See Greenberg*, 177 F.3d at 514; *Weiner*, 108 F.3d at 89.

### b. Whether Liberty Mutual is entitled to dismissal because it is not the corporate entity that issued the subject policy

In the alternative to their 12(b)(1) argument, discussed *supra*, Defendants next assert that Defendant Liberty Mutual is entitled to judgment on the pleadings pursuant to Rule 12(c) because it is not the corporate entity that issued the policy to Plaintiffs. (Doc. # 49 at 9-10). Specifically, Defendants assert that Safeco-Illinois, not Liberty Mutual, issued the subject policy and "the pleadings do not reveal the existence of a contract between the Arnolds and Liberty Mutual." *Id.* at 9. In response, Plaintiffs request a stay of this issue to allow for a period of discovery as to, *inter alia*, "[t]he relationship between Defendants in general, and specifically the contractual or other legal relationship(s) between them." (Doc. # 50 at 12). However, as each of Plaintiffs' claims against both Defendants fail as a matter of law, *see infra* Sections III.A.2.c-o, the Court need not address this issue and Defendants' argument on this ground is **moot**.

### c. Whether the applicable statutes of limitations bar four of Plaintiffs' claims

Defendants next argue that they are entitled to judgment on the pleadings as to Plaintiffs' claims for civil conspiracy, violation of the KCPA, bait advertising, and negligence, because each of these four claims is barred by the applicable statutes of limitations. The Court will address each argument in turn.

###### i.  Civil Conspiracy

Defendants argue that Plaintiffs' civil-conspiracy claim (Count IV) is barred by the applicable statute of limitations. (Doc. # 49 at 10-11). The limitations period for a civil-conspiracy claim under Kentucky law is one year from the date of accrual. Ky. Rev. Stat. § 413.140(1)(c). It is undisputed that Plaintiffs purchased the policy in 2015; the endorsement was mailed to them on September 2, 2015, and received three days later on September 5, 2015. (Doc. # 46 at ¶¶ 64-65). Plaintiffs allege that they became aware of the exclusion at issue in the endorsement on January 12, 2016. *Id.* at ¶¶ 50-66. Thus, the last potentially-relevant overt act alleged by Plaintiffs occurred more than one year prior to the filing of the complaint on October 30, 2017. (Doc. # 1-3). Accordingly, Plaintiffs' civil-conspiracy claim is time barred. *See Chamberlain, LLC v. Hills Land & Dev. Co.*, No. 3:14-cv-448-S, 2015 WL 521047, at *4 (W.D. Ky. Feb. 9, 2015) (finding that claim for civil conspiracy was "time-barred" because it was not brought within one year from the date of the last overt act in furtherance of the conspiracy allegedly occurred). Plaintiffs conceded this point and stated in their Response brief to Defendants' Motion for Judgment on the Pleadings that they "voluntarily withdraw Count IV of their Second Amended Class Action Complaint" in light of Defendants' statute of limitations argument. (Doc. # 50 at 13). Accordingly, Defendants' motion for judgment on the pleadings as to Plaintiffs' civil-conspiracy claim (Count IV) is **granted**.

###### ii.  KCPA

Defendants next assert that Plaintiffs' claim under the KCPA (Count III) should be governed by the two-year statute of limitations set forth in Ky. Rev. Stat. § 367.220(5) and that, applying the purchase of the policy as the date of accrual, the action is time-barred.

(Doc. # 49 at 11). The statute referenced by Defendants governs when an action for recovery of money or property may be brought, and provides:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170 [the KCPA], may bring an action [and] . . . [a]ny person bringing an action under this section must bring such action within one (1) year after any action of the Attorney General has been terminated or within two (2) years after the violation of KRS 367.170, whichever is later.

Ky. Rev. Stat. § 367.220(1), (5).

In response, Plaintiffs argue—without relevant supporting authority—that Kentucky statute provides that "a person bringing a claim for violation of the KCPA related to an insurance policy does so under [Ky. Rev. Stat. §] 446.070." (Doc. # 50 at 14). Plaintiff argues that this more general statute carries a five-year statute of limitations and should apply here because Plaintiffs' KCPA claim was brought generally under the KCPA, § 367.170, not under § 367.220 specifically. *Id.* (citing *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988)).

Plaintiffs' argument is unpersuasive. Kentucky courts and courts interpreting Kentucky law have made clear that the *Stevens* decision did not establish an alternative five-year statute of limitations for insurance-related KCPA claims—or, for that matter, for KCPA claims that were alleged generally rather than expressly pleaded under § 367.220. *See Joiner v. Tran & P Properties, LLC*, 526 S.W.3d 94, 103 (Ky. Ct. App. 2017) (rejecting the plaintiffs' argument that § 446.070 "gives them a cause of action under the KCPA"); *see also 859 Boutique Fitness, LLC v. CycleBar Franchising, LLC*, 699 F. App'x 457, 461 (6th Cir. 2017) (stating that "§ 446.070 does not provide for a private right of action under § 367.170."); *Kentucky Laborers Dist. Council Health & Welfare Tr. Fund v. Hill &*

*Knowlton, Inc.*, 24 F. Supp. 2d 755, 773 (W.D. Ky. 1998) ("[B]ecause the Kentucky legislature provided consumers with a specific remedy under § 367.220, the Court believes that an alternative remedy should not be available under § 446.070."). Plaintiffs allege a KCPA claim pursuant to § 367.170. (Doc. # 46 at ¶ 143). Accordingly, based upon well-established precedent, the two-year statute of limitations set forth in § 367.220(5) applies to Plaintiffs' KCPA claim.

Plaintiffs argue that even if the two-year statute of limitations applied, their KCPA claim is not barred because the date of accrual was October 30, 2017, the date Plaintiffs "discovered" the claim after their loss, and not August 30, 2015, the date the policy was purchased. (Doc. # 50 at 15). In support of their position, Plaintiffs rely upon *Cook v. State Farm Mut. Auto Ins. Co.*, 2002-CA-801-MR, 2004 WL 2011375, at *4 (Ky. Ct. App Sept. 10, 2004). In that case, the Kentucky court dismissed the plaintiff's KCPA claim as barred by the two-year statute of limitations. *Id.* However, noting the Kentucky court's finding that "the act or practice about which Cook complains occurred and her cause of action accrued, *at the very latest*, on the date she picked up the car," Plaintiffs seek to read an implication into the *Cook* opinion to argue "that violations of the KCPA relating to insurance policies accrue only after the implication of coverage after a loss." (Doc. # 50 at 16) (citing *Cook*, 2004 WL 2011375, at *4) (emphasis added). Attaching significance to the Kentucky court's timeline, Plaintiffs conclude that the time began to accrue under the statute of limitations in this case when the adjuster declared the vehicle a total loss on December 3, 2015, implicating the GAP coverage at issue. *Id.* Because their complaint was filed on October 30, 2017, Plaintiffs argue that their claim was timely.

Plaintiffs' reading of the *Cook* opinion is misplaced. The Kentucky court's statement in passing that the fact-specific event in *Cook* was the latest possible relevant act is not controlling, particularly upon a fair reading of the *Cook* opinion in its entirety. In *Cook*, the insureds argued that the "discovery rule" should apply to their KCPA claim, "allowing the statute of limitation to commence from the date a plaintiff knew or should have discovered the deceptive act." *Cook*, 2004 WL 2011375, at *3. The Kentucky court, however, rejected the discovery rule and instead turned to the language of the KCPA for guidance. *Id.* at *4. The language of the statute provides that the action must be brought "within two (2) years *after the violation* of KRS 367.170." Ky. Rev. Stat. § 267.220(5) (emphasis added); *see also Cook*, 2004 WL 2011375, at *4. Accordingly, the Kentucky court measured from the date that "the act or practice about which Cook complains occurred and her cause of action accrued." *Id.*

The root of the KCPA violation alleged here—the "unfair, false, misleading, or deceptive acts and or practices," under § 367.170—is not denial of coverage. It is not substantially disputed that the policy exclusion at issue existed. Rather, the "act or practice about which [Plaintiffs] complain," *Cook*, 2004 WL 2011375, at *4, is that "Defendants offered GAP Insurance to consumers purchasing a vehicle, but chose not to disclose exclusions to consumers until after the purchase of the vehicle and insurance." (Doc. # 46 at ¶ 10). Plaintiffs allege that Defendants sold the policy on August 30, 2015, and that the endorsement page was mailed on September 2, 2015. (Doc. # 46 at ¶ 65). Plaintiffs did not file their complaint until October 30, 2017, "more than two years later; therefore [their] cause of action under the KCPA is time-barred." *Cook*, 2004 WL

2011375, at *4.  Accordingly, Defendants' motion for judgment on the pleadings as to Plaintiffs' KCPA claim (Count III) is **granted**.

### iii.        Bait Advertising

Defendants next assert that Plaintiffs' bait-advertising claim (Count VI) should be governed by the two-year statute of limitations under the KCPA.  (Doc. # 49 at 11).  In response, Plaintiffs assert that this claim should be governed by the general language of Ky. Rev. Stat. § 446.070, which provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."  Plaintiffs further assert that "an action for damages under [Ky. Rev. Stat. §] 446.070 for violation of a statutory right is subject to the five-year statute of limitations in [§] 413.120(2)."  (Doc. # 50 at 18) (citing *Hickey v. Gen. Elec. Co.*, 539 S.W.3d 19, 23 (Ky. 2018)).

Defendants counter Plaintiffs' response by noting the dearth of case law to support that a plaintiff "has ever successfully used § 446.070 to recover for a violation [of the bait-advertising statute] § 517.040."  (Doc. # 53 at 7).  Further, as Defendants point out, there is a dearth of case law demonstrating that there is a separate civil claim in Kentucky for the criminal misdemeanor of bait advertising.  (Doc. # 49 at 25) (citing Ky. Rev. Stat. § 367.152).  In light of the dearth of illustrative Kentucky case law, and as Plaintiffs' bait-advertising claim fails on the merits, *see* Section III.A.2.i, *infra*, the Court declines to take up this issue, and Defendants' statute-of-limitations argument is **denied as moot**.

### iv.        Negligence

Defendants' final statute-of-limitations argument asserts that Plaintiffs' negligence claim (Count I) is time-barred.  (Doc. # 49 at 11).  Specifically, Defendants argue that

Plaintiffs' negligence claim should be governed by the two-year statute of limitations relating to "action[s] for the taking, detaining or injuring of personal property" pursuant to Ky. Rev. Stat. § 413.125. *Id.* In response, Plaintiffs assert that "[n]egligence causes of action resulting in financial, rather than personal, injuries" are subject to the five-year limitations period arising from "[a]n action for an injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated" pursuant to Ky. Rev. Stat. § 413.120(6). (Doc. # 50 at 19) (citing *Newbold v. Cent. Bank of Jefferson Cty., Inc.*, 2008-CA-3-MR, 2010 WL 323127, at *3 (Ky. Ct. App. Jan. 29, 2010).

Kentucky statute does not provide a general limitations period for all negligence claims; rather, the applicable period depends upon the characterization of the injury alleged. *See, e.g.*, Ky. Rev. Stat. §§ 413.140(1)(a) (personal injury); 413.125 (injury to personal property); 413.140(1)(e) (negligence or malpractice of a physician). Defendants seek to characterize the injury in Plaintiffs' negligence claim as "one arising from property damage" within the scope of the two-year statute of limitations in Ky. Rev. Stat. § 413.125. (Doc. # 49 at 11 n.5). However, Defendants fail to provide relevant authority in support of their argument that their alleged failure to use reasonable care in communicating the policy exclusions caused property damage. *See* (Doc. # 46 at ¶ 114). While Plaintiffs' automobile collision and the resulting property damage precipitated this litigation, the alleged damage arising from Defendants' purported negligence was the purchase of a policy that did not contain the coverage Plaintiffs desired and loss of their chance to purchase such a policy from the dealership. (Doc. # 46 at ¶¶ 9, 32-34, 67, 139). As

Defendants have failed to satisfy the Court that Plaintiffs' negligence claim (Count I) is time-barred, Defendants' statute-of-limitations argument as to this claim is **denied**.[3]

### d. Whether Plaintiffs failed to state a negligence claim (Count I)

Next, Defendants argue that they are entitled to judgment on the pleadings as to Plaintiffs' negligence claim (Count I). (Doc. # 49 at 14-15). Specifically, Defendants argue that the claim fails as a matter of law because they did not owe Plaintiffs a duty "to disclose or explain" coverage exclusions *prior* to mailing Plaintiffs the policy endorsement governing GAP insurance coverage. *Id.* at 14 (citing *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 248 (Ky. 1992) (explaining that an insurer owes customers a standard duty of reasonable care rather than a heightened duty to advise)). In response, Plaintiffs argue that a jury question exists as to whether Defendants breached a universal duty of ordinary care by "fail[ing] to disclose the terms of the endorsement to them until such a time that made it impossible" to obtain alternative coverage from their dealership without the exclusion at issue. (Doc. # 50 at 27).

To state a negligence claim under Kentucky law, Plaintiffs must set forth plausible allegations showing (1) Defendants owed Plaintiffs a duty of care; (2) a breach of that duty; and (3) the breach of duty actually and proximately caused Plaintiffs' injuries. *Atic Enters., Inc. v. Cottingham & Butler Ins. Servs., Inc.*, 690 F. App'x 313, 315-16 (6th Cir. 2017) (applying Kentucky law) (finding insurance company had no duty to notify, advise, or discuss policy change with insureds); *Mullins*, 839 S.W.2d at 247 (finding no duty on insurance company to provide advice regarding optional coverage in the absence of

---

[3]   Nonetheless, this point is effectively moot as Plaintiffs' negligence claim fails on the merits. *See* Section III.A.2.d, *infra*.

statutory requirement). "[T]o find potential liability to exist in the case at bar, there must first exist an affirmative duty of the [Defendants] to advise" of the policy exclusions. *Mullins*, 839 S.W.2d at 247. While "[t]he breach of duty question is generally a fact issue for a jury," the underlying question of the existence of a duty "presents an issue of law." *Kendall v. Godbey*, 537 S.W.3d 326, 332 (Ky. 2017); *Mullins*, 839 S.W.2d at 248.

"In the insurance context 'where the language of an insurance contract unambiguously explains the terms and conditions, no separate formal notification is required to effectuate a policy provision unless [an] unannounced change misleads an insured.'" *Atic*, 690 F. App'x at 316. Here, "[i]t is clear from the language of the policy [endorsement] that [carry-over balances from previous loans or leases] w[ere] excluded from coverage." *Id.* at 316-17; (Doc. # 48-1 at 75). Thus, Defendants "had no additional duty to provide separate notification of the exclusion beyond the language of the policy [exclusion], and there was no reason to further explain the policy's terms" due to ambiguity. *Atic*, 690 F. App'x at 317.

Furthermore, the timing of the disclosure by Defendants did not constitute a breach of duty. There is no statutory requirement for an insurer to provide advice regarding the scope of a policy's terms, or to provide the full policy at the time of purchase. Rather, the Kentucky statute provides that, "[s]ubject to the insurer's requirements as to payment of premium, every policy shall be mailed or otherwise delivered to the insured or the person entitled thereto within a reasonable period of time after its issuance[.]" Ky. Rev. Stat. § 304.14-230. Further, "[n]o agreement in conflict with, modifying, or extending any contract of insurance shall be valid unless in writing and made a part of the policy" and

"[n]o insurer or its representative shall make any insurance contract or agreement relative thereto other than as is plainly expressed in the policy." *Id.* § 304.14-180.

Plaintiffs do not allege that the terms or exclusions of the written policy and attendant endorsements mailed to them were ambiguous; nor do Plaintiffs allege that the policy and attendant endorsements were mailed to them within an unreasonable amount of time after purchasing the policy and additional GAP insurance coverage. Defendants owed a duty to deliver the policy and endorsements to Plaintiffs by mail within a reasonable time. Because Plaintiffs fail to allege facts indicating Defendants owed a duty to disclose the endorsement's terms or exclusions prior to purchase or advise them as to the meaning of the terms or exclusions set forth in the language of the policy that was mailed to them, Plaintiffs' negligence claim fails as a matter of law. Ultimately, Plaintiffs wholly fail to point to any relevant authority indicating that insurers have a duty to disclose all policy terms and exclusions prior to sale. Accordingly, Defendants' motion for judgment on the pleadings as to Plaintiffs' negligence claim (Count I) is **granted**.

### e. Whether Plaintiffs failed to state a claim for fraudulent misrepresentation (Count II)

Next, Defendants argue that they are entitled to judgment on the pleadings as to Plaintiffs' "fraud-and-misrepresentation" claim (Count II). Defendants argue that Plaintiffs' allegations fail as a matter of law because there is no allegation that a false statement was made and to prevail on a fraud-by-misrepresentation claim under Kentucky law, "a plaintiff must allege facts showing statements 'to be false, not merely incomplete.'" (Doc. # 49 at 16) (citing *In re Almost Family, Inc. Sec. Litig.*, No. 3:10-cv-520-H, 2012 WL 443461, at *7 (W.D. Ky. Feb. 10, 2012) (analyzing material misrepresentation in a securities-fraud case)). In response, Plaintiffs argue that the statements identified in

paragraphs 119 through 121 of the Second Amended Class Action Complaint constitute false statements, and that "Defendants actively and openly materially misrepresented that they would cover the payoff of a loan or lease following a total loss without exclusion of a carry-over balance in information they disseminated."  (Doc. # 50 at 28).

Under Kentucky law, there are six elements to a claim for fraudulent misrepresentation: (1) the declarant made a material misrepresentation, (2) the misrepresentation was false, (3) the false misrepresentation was made knowingly or recklessly, (4) the declarant induced the plaintiff to act upon the misrepresentation, (5) the plaintiff relied upon the misrepresentation, and (6) that the misrepresentation caused injury to the plaintiff.  *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009). Moreover, a plaintiff's reliance "must be reasonable."  *Id.* (citing *McHargue v. Fayette Coal & Feed Co.*, 283 S.W.2d 170 (Ky. 1955) (finding reliance on stock-feed salesman's representation was not reasonable when the plaintiff was an experienced dairyman and agricultural chemist)).

Here, Plaintiffs wholly fail to point to any relevant authority in support of their fraudulent-misrepresentation claim under the circumstances at hand, and their argument is undermined by the factual allegations set forth in their own pleadings.  Contrary to Plaintiffs' argument in their Response brief, the fraud allegations in paragraphs 119 through 121 of the Second Amended Class Action Complaint referenced by Plaintiffs simply fail to allege that Defendants affirmatively represented "that they would cover the payoff of a loan or lease following a total loss without exclusion of a carry-over balance." *Compare* (Doc. # 50 at 28), *with* (Doc. # 46 at ¶¶ 119-121).

In fact, Plaintiffs allege quite the opposite—an omission of the carry-over balance exclusion from the list of exclusions expressed in the Safeco Insurance Kentucky Auto Product Guide ("product guide"). (Doc. # 50-7). Specifically, Plaintiffs allege that in the section of the product guide titled "Auto Loan/Lease Coverage," Safeco-Illinois provides that "[c]overage does not apply to overdue payments, penalty charges assessed for excessive mileage or excessive wear and tear, ***etc.***" (Doc. # 46 at 19-20) (citing Doc. # 50-7 at 32-33) (emphasis added).

Plaintiffs hang their hat upon the fact that this section does not expressly list the carry-over exclusion. *Id.* However, this ignores the language of the product guide that "coverage does not apply" to three specified instances, "etc." (Doc. # 50-7 at 33). Latin for "and others," *et cetera* (abbreviated *etc.*) is described by Black's Law Dictionary as a term that "usually indicates additional, unspecified items in a series." *Black's Law Dictionary* 592 (8th ed. 2004). This language clearly communicates that there are additional exclusions not listed in the product guide. Nowhere does Safeco-Illinois represent that the coverage at issue was offered "without an exclusion of carry-over balances from previous loans or leases." (Doc. # 50 at 32). Because Plaintiffs failed to allege "that the declarant made a material misrepresentation," their fraudulent-misrepresentation claim fails as a matter of law. *Flegles*, 289 S.W.3d at 549.

Furthermore, even if such a misrepresentation had been made, reliance would have been unreasonable under the circumstances. *Id.* at 549. Like the plaintiff in *McHargue*, whose reliance on a stock-feed salesman was not reasonable because he was an experienced dairyman and agricultural chemist, here Plaintiff alleges that she is experienced in the sale of insurance policies. *McHargue*, 283 S.W.2d at 172; (Doc. # 46

at ¶ 25) (alleging that Plaintiff Jessica Arnold is a licensed, independent insurance agent with 13 years of experience and familiarity with the sale of insurance policies). It therefore strains logic to assert that the Arnolds reasonably relied upon a belief that their specific policy endorsements would contain no additional exclusion language aside from what was generally available in a product guide—particularly when the product guide cited by Plaintiffs clearly communicated that additional exclusions applied. (Doc. # 50-7 at 32-33). Accordingly, because Plaintiffs failed to identify reasonable reliance on a misrepresentation, their fraudulent-misrepresentation claim fails as a matter of law and Defendants' motion for judgment on the pleadings is **granted** as to Count II.

### f. Whether Plaintiffs failed to state a claim for violation of the KCPA (Count III)

Next, Defendants argue that they are entitled to judgment on the pleadings as to Plaintiffs' statutory consumer-protection claim under the KCPA (Count III). (Doc. # 49 at 22-23). This statute declares unlawful any "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. § 367.170.

In order to survive a motion for judgment on the pleadings, a plaintiff asserting a KCPA claim in this context must state a plausible claim that: (1) Defendants were obligated to pay the coverage at issue under the terms of the policy; (2) Defendants lacked a reasonable basis in law or fact for denying the claim; and (3) Defendants either knew there was no reasonable basis for denying coverage or acted with reckless disregard as to the existence of such a basis. *Brown v. Travelers Cas. Ins. Co. of Am.*, No. 15-50-ART, 2016 WL 1644342, at *5 (E.D. Ky. Apr. 25, 2016). *See also Crutchfield ex rel. Crutchfield v. Transamerica Occidental Life Ins. Co.*, 894 F. Supp. 2d 971, 977 (W.D. Ky. 2012), *aff'd sub nom.*, 527 F. App'x 339 (6th Cir. 2013) (granting summary

29

judgment as to a plaintiff's KCPA claim because the coverage sought was not covered under the policy).

Here, Plaintiffs fail to set forth a plausible claim for relief. Defendants were permitted to deny coverage for "carry-over balances from previous loans or leases" pursuant to the terms of the policy endorsement. (Doc. # 48-1 at 75). Therefore, as set forth *infra* in Section III.A.2.j, Defendants were not obligated under the insurance contract to pay for the coverage at issue. Plaintiffs simply fail to translate their mere belief that negative equity should have been covered into any plausible allegations of "unfair, false, misleading, or deceptive acts or practices" in Defendants' conduct. *See generally* (Doc. # 46). Accordingly, Plaintiffs' KCPA claim fails as a matter of law[4] and Defendants' motion for judgment on the pleadings is **granted** as to Count III.

> **g.      Whether Plaintiffs failed to state a civil-conspiracy claim (Count IV)**

Next, Defendants argue that they are entitled to judgment on the pleadings as to Plaintiffs' civil-conspiracy claim (Count IV). (Doc. # 49 at 24-25). Defendants' argument on this ground is **moot** as Plaintiffs have withdrawn Count IV of their Second Amended Class Action Complaint, *see* (Doc. # 50 at 13), and the Court granted Defendants' Motion for Judgment on the Pleadings as to this issue. *See supra* Section III.A.2.c.i.

> **h.      Whether Plaintiffs failed to state an unjust-enrichment claim (Count V)**

Defendants next argue they are entitled to judgment on the pleadings as to Plaintiffs' unjust-enrichment claim (Count V). (Doc. # 49 at 21). To prevail on a claim of

---

[4]      Moreover, even if Plaintiffs' KCPA claim did not fail on the merits, it is time-barred. *See* Section III.A.2.c.ii, *supra*.

unjust enrichment, Plaintiffs must prove (1) a "benefit conferred" upon Defendants at Plaintiffs' expense; (2) a "resulting appreciation of benefit" by Defendants, and (3) "inequitable retention of benefit without payment for its value." *Guerin v. Fulkerson*, 354 S.W.3d 161, 165 (Ky. Ct. App. 2011) (citations omitted). This doctrine "is a legal fiction created to permit recovery where equity says there should be recovery, although there is no recovery in contract." *First. Tech. Capital, Inc. v. JP Morgan Chase Bank, N.A.*, 53 F. Supp. 3d 972, 1002-03 (E.D. Ky. 2014) (quoting *Holley v. Performance Prods., Inc. v. Keystone Auto. Operations, Inc.*, No. 1:09-CV-53-TBR, 2009 WL 3613735, at *5 (W.D. Ky. Oct. 29, 2009)). Whether the doctrine applies is a question of law. *Javier Steel Corp. v. Cen. Bridge Co., LLC*, 353 S.W.3d 356, 359 (Ky. Ct. App. 2011).

Defendants cite to case law providing that unjust enrichment "is unavailable as a theory of recovery . . . [where] a valid and enforceable insurance contract exist[s]" between an insurance company and the insured. (Doc. # 49 at 21) (citing *Guerin v. Fulkerson*, 354 S.W.3d 161, 165 (Ky. Ct. App. 2011); *C.A. Jones Mgmt. Grp., LLC v. Scottsdale Indem. Co.*, No. 5:13-cv-173, 2016 WL 3460445 (W.D. Ky. June 21, 2016)). Plaintiffs' response attempts to distinguish the authority Defendants rely upon in support of their argument, and asserts that "Defendants failed to perform the contract at issue" by failing to pay "*full* GAP insurance coverage." (Doc. # 50 at 32-33) (emphasis added). Plaintiffs wholly fail, however, to cite to any applicable authority contradicting Defendants' argument or otherwise showing that Plaintiffs are entitled to equitable relief under the circumstances at issue. *See Ham Broad. Co., Inc. v. Cumulus Media, Inc.*, No. 5:10-CV-185-R, 2011 WL 13232371, at *4 (W.D. Ky. Oct. 17, 2011) (finding unjust-enrichment claim precluded where a written contract referenced the same subject matter and the

plaintiff "provide[d] no legal precedent to undermine these relatively straightforward rulings" that written contracts preclude unjust-enrichment recovery).

The Second Amended Class Action Complaint specifically references the parties' written insurance contract, and Plaintiffs admit that the endorsement that formed part of the contract specifically precludes coverage for carry-over balances from previous loans or leases; moreover, the facts alleged in Plaintiffs' unjust-enrichment claim "mirror those alleged in [their] breach-of-contract claim." *Shane v. Bunzl Distrib. USA, Inc.*, 200 F. App'x 397, 404 (6th Cir. 2006). "Since a claim for unjust enrichment or implied contract cannot lie under Kentucky law where a written contract references the same subject matter, this theory of recovery is barred by law." *Ham*, 2011 WL 13232371, at *4. As a matter of law, therefore, Plaintiffs' allegations fail and Defendants' motion for judgment on the pleadings as to Plaintiffs' unjust enrichment claim (Count V) is **granted**.

### i. Whether Plaintiffs failed to state a bait-advertising claim (Count VI)

Defendants next argue that they are entitled to judgment on the pleadings as to Plaintiffs' bait-advertising claim (Count VI). (Doc. # 49 at 25). Bait advertising is prohibited by Kentucky penal code and enforceable concurrently by the attorney general and county attorney. *Id.* (citing Ky. Rev. Stat. §§ 167.152 and 517.040). Defendants argue that the statute does not provide a civil remedy and that there is no "separate civil claim for 'bait advertising' in Kentucky." *Id.* Further, Defendants argue that even if the statute provides a private right of action, "Defendants' alleged conduct does not fall within the parameters of the penal provision." *Id.*

The Kentucky bait-advertising statute provides that a person is guilty of bait advertising—a Class A misdemeanor—when, through advertising or other means of communication:

> he offers to the public property or services as part of a scheme or plan with the intent not to sell or provide the advertised property or services [either]: (a) at the price at which he offered them; (b) in a quantity sufficient to meet the reasonably expected public demand . . . or (c) at all.

Ky. Rev. Stat. § 517.040.

Accepting the allegations of Plaintiffs' pleadings as true, Defendants are "nevertheless clearly entitled to judgment." *JPMorgan*, 510 F.3d at 581. As Defendants point out, "Defendants' alleged conduct does not fall within the parameters of the penal provision." (Doc. # 49 at 25). The Second Amended Class Action Complaint does not allege that Defendants offered the GAP insurance at issue as part of a scheme or plan with the intent not to sell or provide the advertised coverage either (a) at the price advertised; (b) in a sufficient quantity to meet public demand; or (c) at all.

In response to Defendants' argument, Plaintiffs "essentially claim that Defendants failed to provide the 'services' advertised (i.e. full GAP insurance coverage) 'at all.'" (Doc. # 50 at 18). Plaintiffs cleverly characterize the services at issue as "*full* GAP insurance coverage" rather than merely "GAP insurance coverage" because the Second Amended Class Action Complaint clearly alleges that Defendants did provide GAP insurance coverage. *Id.* (emphasis added); (Doc. # 46 at ¶ 56) (alleging that Defendants provided GAP coverage in the amount of $747.04). Despite Plaintiffs' clever wording, it is plain that their allegations go to the sufficiency of the services provided—the scope of GAP coverage—rather than whether coverage was provided at all. Moreover, Plaintiffs can point to no relevant authority to support their argument. Even assuming § 517.040

provided a private right of action, Plaintiffs' claim still fails on the merits and Defendants are entitled to judgment as a matter of law; accordingly, Defendants' Motion for Judgment on the pleadings is **granted** as to Plaintiffs' bait-advertising claim (Count VI).

> **j.** **Whether Plaintiffs failed to state a breach-of-contract claim (Count VII)**

Defendants next argue that they are entitled to judgment on the pleadings as to Plaintiffs' breach-of-contract claim (Count VII). (Doc. # 49 at 13). Under Kentucky law, there are three elements to a breach-of-contract claim: (1) "existence of a contract; (2) breach of that contract; and (3) damages flowing from the breach of contract." *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009) (citing *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. Ct. App. 2007)). Defendants assert that Plaintiffs' claim fails as a matter of law as to the second and third elements, "[b]ecause the endorsement explicitly excludes the coverage requested by Plaintiffs." *Id.*

In response, Plaintiffs largely copy and paste the allegations in their pleadings in bullet-point form. Plaintiffs also argue that "the product guide supplied the original terms," not the endorsement. (Doc. # 50 at 26). Finally, Plaintiffs argue that, "where an endorsement added to a policy at a time later than the original purchase changes the coverage and the insured lacks any opportunity to find other coverage due to foreclosure of the market, the endorsement should be held invalid and the insurer should be held to the original terms." *Id.* Plaintiffs wholly fail to rely on any relevant authority in support of their arguments.

The Supreme Court of Kentucky has expressly noted that "[t]he policy and its endorsements validly made a part thereof together form the contract of insurance, and

are to be read together to determine the contract actually intended by the parties." *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 875 (Ky. 2002). Plaintiffs' pleadings concede that Defendants mailed the policy endorsement to Plaintiffs after purchase; moreover, it is undisputed that the endorsement expressly excludes "carry-over balances from previous loans or leases." (Docs. # 46 at ¶¶ 46, 64-66, 81, 126; 47-1 at 75; 48-1 at 75).

Nor do Plaintiffs allege that the exclusion set forth in the endorsement is ambiguous. It is well established that "[w]hen no ambiguity exists in the contract," the Supreme Court of Kentucky "look[s] only as far as the four corners of the document to determine intent." *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 703 (Ky. 2006). Extrinsic evidence, such as the product guide cited by Plaintiffs, may not be considered. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002) (citing *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000)). "The fact that one party may have intended different results, is insufficient to construe a contract at variance with its plain and unambiguous terms." *Abney*, 215 S.W.3d at 703.

Plaintiff attempts to manufacture ambiguity by pointing to the product guide again, but it is obvious from the language of the product guide that it is not the parties' final contemplated contractual agreement. The "New Vehicle Replacement" paragraph that immediately precedes the "Auto Loan/Lease Coverage" (described by Plaintiffs as "GAP insurance" coverage) expressly states that it is "subject to certain limitations." (Doc. # 50-7 at 32). Likewise, the Auto Loan/Lease Coverage section specifically notes that there are exceptions to coverage. *See* (Doc. # 50-7 at 33). This paragraph includes a statement that "[c]overage does not apply to overdue payments, penalty charges

assessed for excessive mileage or excessive wear and tear, *etc.*" *Id.* (emphasis added).

As set forth *supra* in Section III.A.2.e, the term *et cetera* "usually indicates additional, unspecified items in a series." *Black's Law Dictionary* 592 (8th ed. 2004). The language is clearly non-exhaustive. In sum, nowhere does Safeco-Illinois agree to offer the coverage at issue without any further exclusions. Because the endorsement is properly read as part of the insurance contract and expressly excludes the coverage requested by Plaintiffs, the second element of Plaintiffs' breach-of-contract claim fails as a matter of law. Accordingly, Defendants' Motion for Judgment on the pleadings is **granted** as to Plaintiffs' breach-of-contract claim (Count VII).

### k. Whether Plaintiffs failed to state a breach-of-fiduciary-duty claim (Count VIII)

Defendants next argue that they are entitled to judgment on the pleadings as to Plaintiffs' breach-of-fiduciary-duty claim (Count VIII). (Doc. # 49 at 18). Specifically, Defendants argue that Plaintiffs cannot demonstrate that a fiduciary duty arose during the relevant time period, which occurred prior to execution of the contract. *Id.* at 18-19. Under Kentucky law, the basic elements of a breach-of-fiduciary-duty claim are "(1) the existence of a fiduciary duty; (2) the breach of that duty; (3) injury; and (4) causation." *Baptist Physicians Lexington, Inc. v. New Lexington Clinic, P.S.C.*, 436 S.W.3d 189, 193 (Ky. 2013). *See also Seeger Enters., Inc. v. Town & Cty. Bank & Trust Co.*, 518 S.W.3d 791, 795 (Ky. Ct. App. 2017). Here, the parties' arguments focus upon the first element, existence of a fiduciary duty under the circumstances.

"Kentucky law recognizes that implication of fiduciary relationships cannot be precisely defined, given that the circumstances giving rise to them can vary." *Kendrick*, 2007 WL 1035018, at *16 (citing *Davis v. Stockyards Bank Trust Co.*, No. 2003-CA-

002502-MR, 2005 WL 1490459, at *3 (Ky. Ct. App. June 24, 2005)). "The existence of a fiduciary relationship is determined from the factual circumstances of each case" and "[t]hose circumstances must demonstrate an established trust between the parties based on an exchange of confidences." *Knight v. Stewart Title Guar. Co.*, No. CIV.A 07-87, 2014 WL 4986676, at *12 (E.D. Ky. Oct. 6, 2014). Generally, "[i]n the context of insurance, Kentucky law imposes a fiduciary duty upon an insurer for the benefit of an insured based upon the relationship between them *arising from the insurance contract.*" *Kendrick v. Standard Fire Ins. Co.*, No. 06-141-DLB, 2007 WL 1035018, at *16 (E.D. Ky. Mar. 31, 2007) (emphasis added) (citing *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 380 (Ky. 2000)). "To determine whether a fiduciary duty is imposed therefore necessitates consideration of the extent to which the subject matter relates to or is connected with the insurance contract." *Id.*

Plaintiffs assert that there is a fiduciary duty because "[t]he subject matter in this case relates to or is connected with the insurance contract" and a relationship between Defendants and Plaintiff Jessica Arnold exists because "Mrs. Arnold maintained a 13-year relationship with Defendants as an agent authorized and licensed to sell their products." (Doc. # 50 at 31) (citing *Kendrick v. Standard Fire Ins. Co.*, No. 06-141-DLB, 2007 WL 1035018, at *16 (E.D. Ky. Mar. 31, 2007)).

Plaintiffs' arguments, however, are unpersuasive. First, Plaintiff Jessica Arnold's "13-year relationship" as an agent clearly does not "aris[e] from the insurance contract." *Kendrick*, 2007 WL 1035018, at *16. Further, as Defendant noted, even if such a relationship existed, Plaintiffs have provided no relevant authority demonstrating that the fiduciary relationship was formed at the time of sale. *See* (Doc. # 49 at 19) (citing *Blue*

*Cross and Blue Shield of Ky., Inc. v. Whitaker*, 687 S.W.2d 557, 559 (Ky. Ct. App. 1985) ("[O]nce the policyholder has substantially complied with the terms and conditions" for payment as required by the policy, "*then at that point* the insurance company becomes akin to a fiduciary as to the sums that may be owed under the policy.") (emphasis added)). Moreover, Plaintiffs wholly fail to provide any authority in support of their claim that Defendants' delivery of the policy and attendant endorsements "within a reasonable period of time after its issuance" in compliance with Ky. Rev. Stat. § 304.14-230 breached any fiduciary duty. Accordingly, Defendants' Motion for Judgment on the pleadings is **granted** as to Plaintiffs' breach-of-fiduciary-duty claim (Count VIII).

## I. Whether Plaintiffs failed to state a common-law-bad-faith claim (Count IX)

Defendants next argue that they are entitled to judgment on the pleadings as to Plaintiffs' common-law-bad-faith claim (Count X). (Doc. # 49 at 21-22). Specifically, Defendants assert that, because they were not contractually obligated to provide the coverage sought by Plaintiffs pursuant to the exclusion language set forth in the endorsement, Plaintiffs' bad-faith claim fails as a matter of law. *Id.* at 21.

In Kentucky, the elements of a claim "for bad faith based on an insurer's denial of coverage" are (1) an obligation on the part of the insurer to pay the claim under the terms of the policy; (2) lack of a reasonable basis in law or fact for denying the claim; and (3) knowledge on the part of the insurer that there was no reasonable basis for denying the claim or reckless disregard on the part of the insurer for whether such a basis existed. *Pizza Magia Int'l, LLC v. Assurance Co. of Am.*, 447 F. Supp. 2d 766, 779 (W.D. Ky. 2006) (citing *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993)).

Here, Plaintiffs fail to set forth a plausible claim for relief because, as set forth *supra* in Section III.A.2.j, Defendants were not obligated under the insurance contract to pay for the coverage at issue. Defendants were permitted to deny coverage for "carry-over balances from previous loans or leases" pursuant to the terms of the policy endorsement. (Doc. # 48-1 at 75).

In response, Plaintiffs again largely copy-and-paste the allegations set forth in their pleadings. (Doc. # 50 at 34-37). Plaintiffs also argue that "'[m]isrepresenting pertinent facts or policy provisions relating to coverage' constitutes a basis for a bad faith claim in Kentucky" and that determination "[w]hether or not Defendants did this and the Arnolds meet all of the elements of their bad faith claim are all questions of fact for a jury to decide." *Id.* at 37. (citing *Indiana Ins. Co. v. Demetre*, 527 S.W.3d 12, 26 (Ky. 2017)). However, Plaintiffs' reliance upon *Demetre*, 527 S.W.3d at 26, is misplaced. In that case, the Supreme Court of Kentucky explained that first "the insurer must be obligated to pay the claim under the terms of the policy." *Id.* Accordingly, because the express terms of the policy and its attendant endorsement[5] exclude the coverage at issue, Plaintiffs' claim fails as a matter of law and Defendants' Motion for Judgment on the pleadings is **granted** as to Plaintiffs' common-law-bad-faith claim (Count IX).

### m. Whether Plaintiffs failed to state a fraud-by-omission-and-concealment claim (Count X)

Defendants next argue that they are entitled to judgment on the pleadings as to Plaintiffs' "fraud by omission and concealment" claim (Count X). (Doc. # 49 at 17-18).

---

[5] As Defendants note in their joint Motion, "[t]he policy and its endorsements validly made a part thereof together form the contract of insurance, and are to be read together to determine the contract actually intended by the parties." (Doc. # 49 at 13) (citing *Caudill Seed & Warehouse Co. v. Houston Cas. Co.*, 835 F. Supp.2d 329, 337 (W.D. Ky. 2011).

Specifically, Defendants argue that they "owed no duty to disclose to Plaintiffs the exclusions in the contract prior to purchase" because where, as here, "the language of an insurance contract unambiguously explains the terms and conditions, no separate formal notification is required to effectuate a policy provision unless [an] unannounced change misleads an insured." *Id.* at 18 (citing *Atic*, 690 F. App'x at 316).

Here, Plaintiffs do not allege that the policy and its attendant endorsements were ambiguous. Where it is "clear from the language of the policy," therefore, that carry-over balances were excluded from coverage, *see* (Doc. # 48-1 at 75), Defendants "had no additional duty to provide separate notification of the exclusion beyond the language of the policy, and there was no reason to further explain the policy's terms because those terms were unambiguous." *Atic*, 690 F. App'x at 317. Nor do Plaintiffs demonstrate, by citing to the product guide, that there was an "unannounced change" in exclusions, because the guide expressly noted there were others. *See* (Doc. # 50-7 at 32-33); *Atic*, 690 F. App'x at 316. Consequently, Plaintiffs' claim fails as a matter of law.

Under Kentucky law, "a fraud by omission claim is grounded in a duty to disclose." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011). To state a plausible fraud-by-omission claim, a plaintiff must allege facts showing that "(1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence." *Id.* "The existence of a duty to disclose is a matter of law for the court." *Id.*

Here, Plaintiffs' fraud-by-omission claim "founders on the first element." *Id.* Plaintiffs wholly fail to point to any relevant authority demonstrating that an insurer has a

duty to disclose every term of coverage prior to purchase absent the purchaser's request. Rather, Kentucky statute provides that, "[s]ubject to the insurer's requirements as to payment of premium, every policy shall be mailed or otherwise delivered to the insured or the person entitled thereto *within a reasonable period of time **after** its issuance*[.]"  Ky. Rev. Stat. § 304.14-230 (emphasis added).  Accordingly, Plaintiffs "ha[ve] not stated a viable claim of fraud by omission because [they] ha[ve] not established any grounds for a duty to disclose" at the time alleged by Plaintiffs.  *Giddings*, 348 S.W.3d at 748.

Plaintiffs assert that a duty to disclose arises "when a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure."  (Doc. # 50 at 29) (citing *Rivermont Inn, Inc. v. Bass Hotels Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. Ct. App. 2003)).  Plaintiffs argue that "Defendants withheld the complete terms of the policy from them in the first place until after they purchased the policy."  *Id.* at 30.  As noted *supra* in Section III.A.2.e, however, the product guide referenced by Plaintiffs' pleadings clearly references the existence of additional exclusions.  (Doc. # 50-7 at 33). Plaintiffs fail to demonstrate—or provide any authority to support their position—that Defendants "created the impression of full disclosure" prior to mailing the full policy and endorsements.  *Rivermont Inn*, 113 S.W.3d at 641.  Accordingly, Plaintiffs' claim fails as a matter of law, and Defendants' Motion for Judgment on the pleadings is **granted** as to Plaintiffs' "fraud by omission and concealment" claim (Count X).

### n.     Whether Plaintiffs failed to state a promissory estoppel claim (Count XI)

Defendants next argue that they are entitled to judgment on the pleadings as to Plaintiffs' promissory-estoppel claim (Count XI).  (Doc. # 49 at 19).  Defendants argue that a plaintiff must identify a specific promise the plaintiff relied upon to his or her

detriment in order to make a plausible promissory-estoppel claim, which Plaintiffs have failed to do here. *Id.* (citing *Schlenk v. Goodwill Indus. of Ky., Inc.*, No. 3:16-cv-601-JHM, 2016 WL 6836945, at *3 (W.D. Ky. Nov. 18, 2016)).

"The doctrine of promissory estoppel is 'fundamentally different from a contract.'" *Jan Rubin Assocs., Inc. v. Housing Auth. of Newport*, No. 2:03-cv-160, 2007 WL 1035016, at *13 (E.D. Ky. Mar. 30, 2007) (citing *Davis v. Siemens Med. Sols. USA, Inc.*, 399 F. Supp. 2d 785, 797 (W.D. Ky. 2005)). Promissory estoppel "is not an alternative to a standard breach of contract claim, but rather it is founded upon a completely independent theory of recovery." *Id.* The purpose of the doctrine "is to make enforceable 'gratuitous promises' that would ordinarily be unenforceable as 'unsupported by consideration.'" *Id.*

Generally, a claim for promissory estoppel can arise where "a party reasonably relies on a statement of another and materially changes his position in reliance on that statement." *Rivermont Inn*, 113 S.W.3d at 642. To that effect, the required elements to state a claim for promissory estoppel under Kentucky law are: "(1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise." *Schlenk*, 2016 WL 6836945, at *3. *See also Bergman v. Baptist Hosp. Sys., Inc.*, 344 F. Supp. 2d 998, 1003 (W.D. Ky. 2004); *McCarthy v. Louisville Cartage Co.*, 796 S.W.2d 10, 11 (Ky. Ct. App. 1990).

First, because promissory estoppel "is not intended to provide an alternative to a breach of contract claim, where a contract exists on the subject matter of the alleged promise sought to be enforced, a claim for promissory estoppel is not cognizable." *Jan Rubin*, 2007 WL 1035016, at *14 (citing *Shane*, 200 F. App'x at 404) (affirming the "widely

accepted principle that promissory estoppel is applicable only in the absence of an otherwise enforceable contract" on the subject matter); *Davis*, 399 F. Supp. 2d at 799 ("[A]n oral promise made prior to the execution of a written agreement that is inconsistent with the unambiguous terms of the written agreement cannot form the basis of a promissory estoppel claim."). Here, the policy endorsement expressly excludes from coverage "carry-over balances from previous loans or leases." (Doc. # 48-1 at 75). For this reason, Plaintiffs' argument in support of their promissory-estoppel claim that, prior to entering into their insurance contract, they were led to understand their GAP insurance coverage extended to carry-over balances from previous loans or leases, fails as a matter of law. *Davis*, 399 F. Supp. 2d at 799.

Furthermore, mere formulaic pleading that a defendant made a promise is insufficient; rather a complaint must identify a specific promise that the plaintiff relied upon to his or her detriment. *Id.*; *Kallick v. U.S. Bank Nat'l Ass'n*, No. 2:12-cv-106-DLB-CJS, at *8 (E.D. Ky. Oct. 18, 2012) (unpublished). Additionally, a plaintiff's "[r]eliance on the promise must be justified." *Butler v. Progressive Cas. Ins. Co.*, No. 5:04-cv-84-R, 2005 WL 1009621, at *4 (W.D. Ky. Apr. 25, 2005); *FS Invs., Inc. v. Asset Guar. Ins. Co.*, 196 F. Supp. 2d 491 (E.D. Ky. 2002); *McCarthy*, 796 S.W.2d at 11.

In *Schlenk*, the Court dismissed an employee's promissory-estoppel claim because the plaintiff failed to allege a promise with the requisite specificity. *Schlenk*, 2016 WL 6836945, at *3. Noting that the *Schlenk* plaintiff "formulaically plead[] that [her employer] Goodwill made a promise of continued employment, she provide[d] no facts from which a court could infer who made the promise or the nature or substance of the promise. *Id.* The *Schlenk* plaintiff's complaint made general references to the existence

of both an employee handbook and a progressive discipline policy, but "fail[ed] to allege any specific content that altered the at-will relationship or qualified as a promise regarding job security." *Id.* Therefore, the *Schlenk* court found that the complaint failed to allege sufficient factual content from which a court could draw the reasonable inference that the defendant was "liable for the claim of promissory estoppel." *Id.*

Likewise, in *Butler*, the Court granted summary judgment on an employee's promissory-estoppel claim because the employee's reliance on his employer's alleged promise was not justified. *Butler*, 2005 WL 1009621, at *4. The Court found that the plaintiff could not rely on his supervisors' statements that he would receive "progressive discipline before termination" because those oral statements directly contradicted the company's written handbook stating that he was an at-will employee. *Id.* As a result, the Court concluded that "Mr. Butler's reliance on this statement was not justified because all of the written material stated that he was an at-will employee." *Id.*

Here, like the plaintiff in *Schlenk*, Plaintiffs' Second Amended Class Action Complaint fails to allege facts regarding who made the promise or the specific nature or substance of the promise. Plaintiffs' Response asserts that "the Arnolds identified the promise very clearly: GAP insurance coverage without an exclusion of carry-over balances from previous loans or leases as well as statements that fraudulently induced them to change their position." (Doc. # 50 at 32). In support of their argument that they alleged sufficient facts to support a promise, Plaintiffs point to six paragraphs in their Second Amended Class Action Complaint (Doc. # 46) as well as a Kentucky Auto Product Guide apparently published by Safeco-Illinois and attached as an exhibit to Plaintiffs' Response. (Docs. # 46 at ¶¶ 25-26, 33, 60, 190-92 and 50-7 at 32-33).

However, nowhere in these documents cited by Plaintiffs is there a promise to provide GAP insurance with *no exclusions.* Paragraphs 25 and 26 of the Second Amended Class Action Complaint identify Plaintiff Jessica Arnold as a licensed, independent insurance agent with 13 years of experience, including experience selling insurance on behalf of Defendants; Plaintiffs allege that during her time as an agent, Plaintiff Jessica Arnold routinely sold GAP insurance "with the understanding that the GAP insurance offered by the Defendants would pay the difference between the remaining debt on the customer's financing and the actual cash value of the motor vehicle after being declared a 'total loss.'" (Doc. # 46 at ¶¶ 25-26). Plaintiffs allege no facts, however, specifying how Plaintiff Jessica Arnold came to have this understanding. The next paragraph identified by Plaintiff likewise makes a vague reference to Plaintiffs' "understanding" of coverage without specifying the source of their alleged understanding. *Id.* at ¶ 33. The next paragraph relied upon by Plaintiffs asserts that "an agent never mentioned the exclusion." *Id.* ¶ 60. However, Plaintiffs fail to offer any authority to support their assertion that an agent's alleged failure to "mention" policy exclusions constitutes the requisite promise to satisfy the first element of a promissory-estoppel claim.

Finally, Plaintiffs point to their bad-faith allegations in Count IX of the Second Amended Class Action Complaint, where they assert:

> 190. Under the terms of their policies, the Plaintiffs and the proposed class were led to believe the Defendants, under the GAP insurance coverage and during the course of a valid claim, would pay the difference between the actual value of the automobile and the amount still owed on the vehicle when a total loss occurred.
> 191. This was how the Defendants explained the GAP insurance coverage to their agents and how they marketed and advertised the policy to the general public.

192. Further, the Kentucky Essential Personal Auto Policy, offered to the potential consumer by the Defendants, outlined all coverage terms, conditions, and exclusions that would ever apply to a Kentucky auto policy.

(Doc. # 46 at ¶¶ 190-192). These vague allegations still fall short of alleging facts regarding who made the promise or the specific nature or substance of the promise. Further, these allegations fail to identify a promise of "GAP insurance coverage without an exclusion of carry-over balances from previous loans or leases" or otherwise identify with any specificity "statements that fraudulently induced [Plaintiffs] to change their position." (Doc. # 50 at 32).

Plaintiffs also point outside the pleadings to a Kentucky Auto Product Guide apparently published by Safeco-Illinois and attached as an exhibit to Plaintiffs' Response. (Doc. # 50-7 at 32-33). However, even considering this document, Plaintiffs still fail to demonstrate that Defendants promised to provide GAP coverage with no exclusions. The product guide does not specifically list "GAP insurance," but does list "New Vehicle Replacement" and "Auto Loan/Lease Coverage." (Doc. # 50-7 at 32-33). The "New Vehicle Replacement" section specifically notes that coverage is "subject to certain limitations." *Id.* at 32. Likewise, the portion of the Kentucky Auto Product Guide that addresses "Auto Loan/Lease Coverage" specifically notes that there are exceptions to coverage. *See* (Doc. # 50-7 at 33). This paragraph includes a statement that "[c]overage does not apply to overdue payments, penalty charges assessed for excessive mileage or excessive wear and tear, *etc.*" *Id.* (emphasis added). As set forth *supra* in Section III.A.2.e, the language is clearly non-exhaustive.

In sum, nowhere does Safeco-Illinois represent that the coverage at issue was offered "without an exclusion of carry-over balances from previous loans or leases." (Doc.

# 50 at 32). Nor do Plaintiffs point to any specific language or otherwise provide factual support for their claim that Defendants published "statements that fraudulently induced [Plaintiffs] to change their position." *Id.* Plaintiffs have failed to identify the requisite promise—the first element of the promissory-estoppel claim—and therefore their claim fails as a matter of law.

In addition to failing to allege facts identifying the requisite promise, Plaintiffs also failed to allege facts to support a finding that their alleged reliance was justified. Just as in *Butler*, reliance on this purported promise was not justified because it directly conflicted with the written language of the policy endorsement as well as the language of the Kentucky Auto Product Guide, which notified Plaintiffs that the coverage was subject to exclusions. *Butler*, 2005 WL 1009621, at *4. Further, as Plaintiff Jessica Arnold alleges that she is an insurance agent with 13 years of experience and familiarity with the sale of insurance policies, *see* (Doc. # 46 at ¶ 25), it strains logic to assert that she justifiably relied upon a belief that her specific policy endorsements contained no additional exclusion language aside from what was generally available in a product guide— particularly when the product guide cited by Plaintiffs clearly communicated that additional exclusions applied. (Doc. # 50-7 at 32-33). Accordingly, because Plaintiffs failed to identify either a promise or justifiable reliance on a promise, their promissory-estoppel claim fails as a matter of law and Defendants' motion for judgment on the pleadings is **granted** as to Count XI.

### o. Whether Plaintiffs failed to state a claim for violation of the Kentucky UCSPA (Count XII)

Finally, Defendants argue that they are entitled to judgment on the pleadings as to Plaintiffs' statutory-bad-faith claim for violation of the Kentucky Unfair Claims Settlement

Practices Act ("UCSPA") (Count VI) "for the same reasons the bad faith and KCPA claims fail." (Doc. # 49 at 23-24). Specifically, Defendants assert that—just as with a common-law-bad-faith claim—under Kentucky law, an insurer must be contractually obligated to pay the claim under the terms of the policy in order to be liable under a statutory-bad-faith claim. *Id. See Demetre*, 527 S.W.3d at 26 ("The gravamen of the UCSPA is that an insurance company is required to deal in good faith with a claimant, whether an insured or a third-party, with respect to a claim which the insurance company *is contractually obligated to pay*.") (emphasis added). Here, because Defendants were not contractually obligated to pay for carry-over balances from previous loans or leases pursuant to the express language of the policy endorsement, *see supra* Section III.A.2.j, Plaintiffs' claim fails as a matter of law, and Defendants' motion for judgment on the pleadings as to Plaintiffs' statutory-bad-faith claim (Count XII) is **granted**.

**B.     Plaintiffs' Cross-Motion to Stay Pending Discovery**

In response to Defendants' joint Motion to Dismiss and for Judgment on the Pleadings (Doc. # 49), Plaintiffs filed a Cross-Motion to Stay proceedings to allow time for fact discovery regarding, *inter alia*, the legal relationship between Defendants Safeco-Illinois and Liberty Mutual. (Doc. # 51 at 9-13). However, as each of Plaintiffs' claims against both Defendants fail as a matter of law, *see supra* Sections III.A.2.c-o, Plaintiffs' Cross-Motion to Stay (Doc. # 51) is **denied as moot**.

**C.     Defendants' Motion for Sanctions**

Finally, the Court will turn to Defendant Liberty Mutual's Motion for Sanctions. (Doc. # 52). The Motion arises from the August 17, 2018 telephonic conference held by the Court to discuss four pending motions in this matter: Defendants' (First) Motion for

Judgment on the Pleadings (Doc. # 23); Plaintiffs' (First) Motion to Stay (Doc. # 37), Plaintiffs' Motion for Leave to Amend the First Amended Complaint (Doc. # 38), and Defendants' Motion to Strike (Doc. # 41). Following the conference, the Court entered an Order granting leave for Plaintiffs to amend the complaint "to the extent that Plaintiffs seek to name the proper party and amend the allegations of Count Two." (Doc. # 45). The Court denied the other pending motions, and provided that Defendants may renew their Motion for Judgment on the Pleadings after the filing of Plaintiffs' Second Amended Complaint. *Id.* Plaintiffs filed their Second Amended Class Action Complaint on August 31, 2018, substituting Safeco Insurance Company of Illinois ("Safeco-Illinois") for the previously-named Safeco Insurance Company of America ("Safeco-America"), and adding more specific allegations to the "Fraud and Misrepresentation" claim (Count II). *See* (Doc. # 46) (highlighting changes and amendments in **bold** typeface). Otherwise, the allegations were identical to the First Amended Complaint.

Liberty Mutual asserts that, following its telephonic conference with the parties, the Court "allow[ed] Plaintiffs to amend their complaint to substitute Safeco-Illinois in place of" both Safeco-America *and* Liberty Mutual and, therefore, that by only substituting Safeco-Illinois in place of Safeco-America, and keeping Liberty Mutual in the case Plaintiffs acted "contrary to the Court's order." (Doc. # 49 at 6). Liberty Mutual urges the Court to impose Rule 11 sanctions based upon the violation of the Court's Order by Plaintiffs' counsel. (Doc. # 52 at 9). Defendant further asserts that Rule 11 sanctions are appropriate because Plaintiffs have no factual basis to support their claims against Liberty Mutual because Safeco-Illinois was the entity that issued the insurance policy at issue in this litigation. *Id.* at 5.

Rule 11 of the Federal Rules of Civil Procedure provides that by presenting a pleading or written motion to the Court, an attorney certifies that, among other things, "the factual contentions [made therein] have evidentiary support or, if specifically so identified will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). If counsel violates Rule 11, after giving notice and a reasonable opportunity to respond "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *Id.* at 11(c)(1). In reviewing a Rule 11 motion, courts employ an "objective standard." *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990). Courts have broad discretion in determining whether Rule 11 sanctions are appropriate. *See Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997); *Mann*, 900 F.2d at 958.

Here, the Court finds that Rule 11 sanctions are not appropriate. The Court notes that, aside from exchanging Rule 26(a)(1) disclosures, the parties have not had a meaningful opportunity to conduct discovery. Plaintiffs have not had an opportunity to propound interrogatories or otherwise confirm the relationship between Liberty Mutual and Safeco-Illinois aside from publicly-available information and the policy itself. While the Court determined that Plaintiffs' legal theories failed as a matter of law, there is insufficient evidence that sanctions are warranted. The Court finds that Liberty Mutual has failed to demonstrate that Plaintiffs' counsel acted unreasonably in believing discovery could have shown Liberty Mutual had a hand in marketing the coverage at issue or otherwise was potentially responsible for the alleged claims-handling practices at issue, particularly when Liberty Mutual's name was referenced in policy documents as

well as Safeco advertising materials and Liberty Mutual claims representatives appear to have handled Plaintiffs' claim at least in part. *See* (Doc. # 54 at 6-10, 13).

Moreover, the Court finds that Liberty Mutual overstates the scope of the Order granting Plaintiffs' request for leave to amend. There is evidence that Plaintiffs' Motion to Amend was directed at having named the wrong Safeco entity. *See, e.g.*, (Doc. # 52-1 at 3). Neither the Court's Minute Entry Order for the August 17, 2018 Telephone Conference nor the Court's review of the unofficial transcript of the proceedings show that the Court specifically required Plaintiffs to substitute Safeco-Illinois for *both* Defendants. *See* (Doc. # 45). Rather, the Court's Order granted Plaintiffs' request for leave to amend "to the extent that Plaintiffs seek to name the proper party and amend the allegations of Count Two" and denied the remaining motions without prejudice. *Id. See also* (Doc. # 38 at 10) (stating that "the Arnolds now seek to add Safeco-Illinois as a new party to this case"). Dismissal of Liberty Mutual was not expressly discussed. Based upon this unintended ambiguity, it is not clear that Plaintiffs acted in violation of the August 17, 2018 Order. Without more, the Court declines to exercise its discretion to impose sanctions.

Plaintiffs in turn argue that "[b]ecause Liberty Mutual is taking such a bizarre position, has bombarded Plaintiffs' counsel with harassing emails and threats, and intentionally misstates what occurred during the Court's telephone conference, the Plaintiffs request that the Court . . . in turn, impose the appropriate Rule 11 sanctions in favor of Plaintiffs." (Doc. # 54). Due to the ambiguity caused by the parties' arguments at the August 17, 2018 Telephone Conference, the Court likewise declines to exercise its discretion to impose Rule 11 sanctions on counsel for Liberty Mutual.

Finally, the Court notes that each sides' request for sanctions fails on procedural grounds. Liberty Mutual asserts without support—despite attaching extensive communications with opposing counsel—that it served Plaintiffs with its Motion for Sanctions in compliance with Rule 11(c)(2), but both parties fail to actually show that they served one another at least 21 days before making their request to the Court in compliance with the Rule. *See also Reed v. Ind. Ins. Co.*, No. 10-CV-13247, 2010 WL 6778868, at *4 (E.D. Mich. Dec. 23, 2010) (denying motion for Rule 11 sanctions for failure to comply with procedural requirements when movant "failed to show that it served a Rule 11 motion on Plaintiffs at least 21 days before making its request to the Court."). Accordingly, the parties' requests for sanctions are **denied**.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)     Defendants' joint Motion to Dismiss and for Judgment on the Pleadings (Doc. # 49) is **GRANTED**;

(2)     Plaintiffs' Cross-Motion to Stay (Doc. # 51) is **DENIED**;

(3)     Defendant Liberty Mutual's Motion for Sanctions (Doc. # 52) is **DENIED**;

(4)     Plaintiffs' Second Amended Class Action Complaint is **DISMISSED** and **STRICKEN** from the Court's active docket; and

(5)     Judgment shall be entered contemporaneously herewith.

This 28th day of May, 2019.



Signed By:

*David L. Bunning*

United States District Judge